**UNITED STATES of America, Plaintiff,**

v.

**Donald E. DISTLER, et al., Defendants.**

**Civ. A. Nos. 88–0200–L(J), 88–0201–L(J).**

United States District Court,
W.D. Kentucky,
Paducah Division.

Feb. 9, 1990.

See also 741 F.Supp. 637.

Jon A. Mueller, Atty., Environmental Enforcement Section, Land and Natural Resources Div., Washington, D.C., Richard A. Dennis, Asst. U.S. Atty., Louisville, Ky., for plaintiff U.S.

Jeffrey C. Fort, Deborah H. Bornstein, Katherine Hahn, Gardner, Carton & Douglas, Chicago, Ill., Virginia H. Snell, H. Carl Horneman, Wyatt, Tarrant & Combs, Louisville, Ky., for defendants Angell Mfg. Co., Angex Corp., W.E. Davis.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

This matter comes before the court on the motion of Angell Manufacturing Co., Angex Corporation, and Mr. W.E. Davis to dismiss the complaint of the United States for failure to state a claim. The issue before the court is whether a dissolved Ohio corporation or its shareholder distributee can be held liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") nine years after dissolution and asset distribution. Because the court finds that CERCLA imposes no such liability, the motion is GRANTED.

### Factual Background

The government alleges that in October of 1976, Defendant Angell Manufacturing Co. contracted to have approximately 2,000 gallons of hazardous substances transported for disposal at two sites in Jefferson County and Hardin County, Kentucky. In April of 1979 the corporation changed its name to Angex Corporation for the purpose of selling its assets to another corporation headed by some of the company's key managers. Following execution of an asset purchase agreement, Angex dissolved and distributed the purchase price to its shareholders, including Defendant Davis. The new corporation continued to operate the company under the Angell name. None of the shareholders or officers of Angex became shareholders of the new corporation and the United States concedes that the sale of assets was in every respect an arm's length transaction.

In March, 1988, the United States filed this CERCLA action against numerous defendants, including the new Angell, seeking the recovery of response costs under Section 107 of CERCLA for clean up of the two Kentucky dump sites. After preliminary discovery, the United States learned of the Angell asset purchase and amended

its complaint to add the former Angell, Angex and Davis as parties defendant. The present controversy involves only the first Angell, Angex and their shareholder, Mr. Davis. There is in effect, only one corporate defendant; for simplicity's sake the court will refer to the corporate defendant as Angex.

*Liability under CERCLA Section 107*

■ The government seeks to hold Defendant Angex liable as a "generator defendant," defined under Section 107(a)(3) of CERCLA as:

> (3) any *person* who by contract agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances....

42 U.S.C.S. 9607(a)(3) (1989) (Emphasis added).

"Person" is defined very broadly in Section 101 and includes "corporations." The statute is silent, however, on the liability of dissolved corporations and their shareholder distributees.

The issue of a dissolved corporation's liability under CERCLA was addressed by the Ninth Circuit in *Levin Metals v. Parr–Richmond Terminal Co.*, 817 F.2d 1448 (9th Cir.1987) and by the District Court for the District of Utah in *U.S. v. Sharon Steel Corp.*, 681 F.Supp. 1492 (D.Utah 1987).

In *Levin Metals,* the court held that a corporation which had been dissolved nine years before CERCLA's enactment and twelve years before the plaintiff incurred clean up costs could not be sued for contribution under the Act. The court based its ruling on state law, however, not on CERCLA. Because CERCLA is silent as to a dissolved corporation's liability, the court, relying on Rule 17(b) of the Fed.R.Civ.P., looked to California corporate law to determine the dissolved corporation's capacity to be sued under the Act. The court barred the suit because the California Corporate Code precluded suit against dissolved corporations on causes of action arising after dissolution; Plaintiff's CERCLA claim accrued nine years after dissolution when CERCLA was passed.[1]

The plaintiff argued that the California law conflicted with CERCLA's doctrine of retroactivity and was therefore preempted by federal law. The court expressly rejected this argument stating that Rule 17(b) only determined the corporation's *capacity* to be sued not its *liability.*[2] Having found that the corporation lacked the capacity to be sued the court did not rule on the issue of liability.

Thus, under the *Levin Metals* approach the court would look to the corporate law of the state of Angex's incorporation (Ohio) to determine whether it has the capacity to be sued before deciding the issue of liability under CERCLA.

This approach was criticized and rejected by the court in the *Sharon Steel* case. The corporation there had dissolved but was still in the process of winding up its affairs. The corporation argued that it lacked the capacity to be sued since the claim was

---

1. The statute relied on, Cal.Corp.Code § 2011(a) provides:

   > In all cases where a corporation has been dissolved, the shareholders may be sued in the corporate name of such corporation upon any cause of action against the corporation *arising prior to its dissolution.* This section is procedural in nature and is not intended to determine liability.
   >
   > (Emphasis added.)

   Although the defendant's activities in *Levin Metals* occurred prior to dissolution, because the CERCLA cause of action did not arise until after dissolution, the court held the claim barred.

2. "Levin's preemption argument turns on its characterization of the California law here involved as law limiting imposition of *liability.* A more accurate characterization is that the law determines *capacity* to be sued. Levin's interpretation, if followed, would prevent courts from looking to state law to determine whether a dissolved corporation could be sued in any case involving a federal cause of action. We reject this reasoning and hold that CERCLA does not preempt California law determining capacity to be sued." 817 F.2d 1448, 1451 (Emphasis original).

filed after the state's two year limitation on actions against dissolved corporations. Finding that the corporation was liable under CERCLA the court held that state capacity statutes were preempted by federal law to the extent they shielded a corporation which would otherwise be liable under CERCLA.

> The fact that section 107 of CERCLA defines liability does not necessarily mean that it does not preempt state capacity law as well. The distinction the [*Levin Metals* court] relied on between statutes limiting liability and those defining capacity to be sued is a distinction without a difference. Every statute limiting liability defines, at least in part, one's capacity to be sued, and every statute limiting one's capacity to be sued also limits liability. Indeed, the surest way to limit one's liability is to take away his capacity to be sued. One cannot be held legally responsible for his acts if that responsibility cannot be enforced.
>
> Applying the court of appeals' reasoning, a state could not directly limit the liability of owners and operators of hazardous waste sites, but it could indirectly limit their liability by taking away their capacity to be sued. The practical effect is the same, whether the limitation is direct or indirect. [Footnote omitted].
>
> Congress clearly intended to hold responsible parties liable for cleanup costs "[n]otwithstanding any other provision or rule of law." 42 U.S.C. § 9607. It did not limit the preemptive force of section 107 to state liability laws, nor is this court willing to undermine congressional intent by reading such a restriction into the statute. This court concludes that, if the effect of a state capacity statute is to limit the liability of a party Congress meant to hold liable for cleanup costs, Congress intended CERCLA to preempt it.

681 F.Supp. at 1497–98.

Unlike the *Levin Metals* and the *Sharon Steel* case, where the corporations sought to avoid CERCLA liability by interposing the state corporate capacity statute, here the *government* argues that the state capacity statute makes Angex *amenable* to suit. However, even if the court finds that procedurally Angex has the capacity to be sued under Ohio corporation law the court must still determine whether the substantive law of CERCLA imposes liability. If CERCLA imposes liability but the corporation lacks the capacity to be sued under state law the two laws conflict and CERCLA preempts the state capacity statute. The court follows *Sharon Steel* and declines to follow the *Levin Metals* court in this regard.

### Liability of Dissolved Corporations Under CERCLA

Whether a dissolved corporation is liable under CERCLA presents the court with a case of first impression. Unlike the present case, the corporation in *Sharon Steel* was in the process up winding up its affairs but had not distributed all its assets; the "funeral [was] still going on." 681 F.Supp. at 1498. Angex's funeral is long over; as the court stated in *Sharon,* the corporation in this case is "dead and buried."

In determining the liability of successor corporations under CERCLA, courts have found it appropriate to apply a uniform national rule. *Smith Land and Improvement Corp. v. Celotex Corp.,* 851 F.2d 86 (3d Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). We did so in applying the doctrine of successor liability to Angex's successor. Such a course is equally advisable when determining the liability of a dissolved corporation. Whether a corporation is liable under CERCLA is a question of federal law and cannot depend on the law of the state of incorporation which will vary from state to state. By enacting CERCLA Congress created a national program to address a national problem. It could not have intended that companies in identical positions be treated differently if they were incorporated in different states. Such would be the result if the issue of liability depended upon the law of the fifty states.

The United States has presented no authority and the court has discovered none which would permit the imposition of liabili-

ty upon Angex or Mr. Davis. Although there is abundant authority for CERCLA's retroactive application, there is no precedent for imposing liability on a dissolved corporation nine years after it has wound down and distributed it assets.

In its initial response to Defendants' Motion to Dismiss, the government relied on *Sharon Steel* for the proposition that a dissolved corporation could be sued under CERCLA. Perhaps realizing that the corporation in that case was not "dead and buried" it withdrew that argument and has proceeded solely under the theory that Angex is amenable to suit under Ohio Rev. Code § 1701.88(B).[3]

Because the United States has presented no convincing authority to support its position that a corporation which has completely wound down and distributed its assets can be held liable under CERCLA, Defendants Motion to Dismiss is GRANTED.

---

**3.** Section 1701.88(B) provides that:
Any claim existing or action or proceeding pending by or against the corporation or *which would have accrued against it* maybe prosecuted to judgment, with right of appeal as in other cases, but any proceeding, execution, or process, or the satisfaction or performance of any order judgment, or decree, may be stayed as provided in section 1701.89 of the Revised Code.
(Emphasis added.)