COLUMBIA RIVER SERVICE
CORP., Plaintiff,

v.

Charles GILMAN, et ux., et
al., Defendants.

No. C90–5166B.

United States District Court,
W.D. Washington,
at Tacoma.

Nov. 29, 1990.

Peter H. Haller, Ater, Wynne, Hewitt, Dodson & Skerritt, Seattle, Wash., for plaintiff.

Kevin G. Staples, Landerholm, Memovich, Lansverk & Whitesides, Inc., P.S., Vancouver, Wash., for defendants Charles Gilman, et ux., Jerry Melton, et ux., Yankee Country Flight Center, Inc.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

BRYAN, District Judge.

THIS MATTER comes before the court on the motion of Defendants Yankee Country Flight Center, Inc., ("Yankee Country"), Charles Gilman, and Jerry Melton to dismiss the complaint of Plaintiff Columbia River Service Corporation ("CRSC"). Because matters outside the pleadings have been presented to and considered by the court, the motion has been treated as a motion for summary judgment. Fed.R. Civ.P. 12(b). The court has considered the memoranda, affidavits, and exhibits filed in support of, and in opposition to, this motion and the file. For the reasons stated herein, the Motion to Dismiss should be granted in part and denied in part.

■ Under Fed.R.Civ.P. 56(c), the entry of summary judgment is mandated when the evidence in the record shows no genuine issue of material fact. *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626 (9th Cir.1987); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1985), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). A motion for summary judgment must be granted against the nonmoving party who fails to prove an essential element of the claim. A genuine dispute over a material fact exists if the evidence is such that a reasonably jury could return a verdict of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must also consider the substantive evidentiary burden that the nonmoving party must meet at trial. *T.W. Elec. Service v. Pacific Elec. Contractor*, 809 F.2d at 632.

### FACTUAL/PROCEDURAL BACKGROUND

CRSC filed this case against the individual and corporate defendants under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, (CERCLA), 42 U.S.C. Sec. 9607(a), seeking to recover costs necessary to respond to the release and/or threat of release of hazardous substances at the Vancouver Aerodome property. CRSC also sought declaratory relief under Section 113(g)(2) of CERCLA, 42 U.S.C. Sec. 9613(g)(2). Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, CRSC asked the court to declare the defendants liable under CERCLA for all past and future costs to respond to and abate the release and/or threat of release of hazardous substances from the facility.

CRSC bought the property from the defendants in 1983. Plaintiff alleges that the facility was used during Defendants' ownership as an aircraft painting facility. Contamination, allegedly caused by Defendants' use, was discovered at the site in 1987, and Plaintiff incurred substantial expenses in cleaning up and studying the site.

Yankee Country Flight Center, Inc., dissolved on December 31, 1986, when it filed Articles of Dissolution with the Washington Secretary of State. Plaintiff's complaint was filed on April 20, 1990 against Yankee Country, Gilman, and Melton. Gilman and Melton were sued as "owners/operators" of the site.

Defendants assert in their motion that Yankee Country Flight Center is not a "person" as defined in CERCLA. Defendants further assert that a dissolved corporation and its shareholders are not liable under CERCLA. Plaintiff frames the issue as whether Congress intended for CERCLA to preempt state law that shields otherwise liable polluters from liability.

### ISSUES PRESENTED

I. Whether CERCLA preempts state statutes that determine the capacity of a corporation to be sued.

II. Whether shareholders of a dissolved corporation may be held individually liable under CERCLA as owners/operators.

## DISCUSSION

### I. *CERCLA preemption of state capacity statutes*

#### A. Background

Section 107(a) of CERCLA lists four classes of persons who are potentially liable for the costs of removal or remedial actions to abate contamination from hazardous substances. 42 U.S.C. sec. 9607(a). Under CERCLA, the term "person" includes a corporation. 42 U.S.C. sec. 9601(21). The statute is silent, however, on the question of the liability of dissolved corporations, and courts are divided on the question.

Fed.R.Civ.P. 17(b) states that "the capacity of a corporation to be sued shall be determined by the law under which it was organized." Yankee Country was a Washington corporation. The Washington legislature has specifically defined the capacity of a dissolved corporation to be sued. Title 23A.28.120 RCW provides that a corporation ceases to exist upon the filing of the articles of dissolution, except for the purpose of suits as provided in Title 23A. Title 23A.28.250 RCW, which has been recodified as RCW 23B.14.340, states that the dissolution of a corporation "shall not take away or impair any remedy available against such corporation, its directors, officers, or shareholders ... if action or other proceeding is commenced within *two years* after the date of dissolution." (emphasis added).

For CERCLA actions filed more than two years after the dissolution of a defendant Washington corporation, the question becomes whether CERCLA preempts RCW 23B.14.340.

#### B. Survey of the law on CERCLA preemption of state capacity statutes.

At least three courts have ruled on the question of CERCLA preemption of state capacity statutes. The Ninth Circuit was the first to do so in *Levin Metals Corp. v. Parr–Richmond Terminal Company,* 817 F.2d 1448 (9th Cir.1987).

In *Levin,* the defendant corporation dissolved in 1971, nine years before the enactment of CERCLA. The plaintiff did not incur cleanup costs until 1983, twelve years after the dissolution of the defendant corporation. *Id.* at 1449.

Under California law, a corporation cannot be sued for causes of action arising after its dissolution. Cal.Corp.Code sec. 2011(a). The Ninth Circuit framed the issue in *Levin* as "whether a dissolved corporation may be sued for injuries arising out of the pre-dissolution activities, even though the cause of action was not created until after its dissolution." *Id.* at 1450. The majority of the opinion is devoted to discussions of the retroactivity of CERCLA and of the time when the action under CERCLA actually accrued. *Id.* at 1450–51.

The last two paragraphs of the decision address the issue of CERCLA preemption of a state capacity statute. On the preemption issue, the court did not discuss the language of CERCLA, the policies of CERCLA, or the legislative intent of Congress in passing CERCLA. Nevertheless, the *Levin* court concluded "CERCLA does not preempt California law determining capacity to be sued."

In holding that CERCLA does not preempt California law determining the capacity to be sued, the Levin court indicated that CERCLA might preempt those state laws that limit a corporation's liability but not those that determine a corporation's capacity to be sued. *Id.* at 1451. The court feared that to rule otherwise "would prevent courts from looking to state law to determine whether a corporation could be sued in any case involving a federal cause of action." *Id.*

The rule from *Levin,* that CERCLA does not preempt state capacity statutes, is consistent with Eighth Circuit law. In *Onan Corp. v. Industrial Steel Container Co.,* 909 F.2d 511 an unpublished opinion decided on June 5, 1990, the Eighth Circuit Court affirmed the district court, which held that a contribution action brought against a dissolved corporation for cleanup costs under CERCLA was barred by state law that gives a corporation the capacity to prosecute and defend actions for only three

years after formal dissolution. The Supreme Court recently denied review of this decision. —— U.S. ——, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). This court has not reviewed the opinion in *Onan Corp.*, and therefore, the reasoning supporting the court's decision is unknown.

The decision in *Levin* was strongly criticized by the District Court of Utah in *U.S. v. Sharon Steel*, 681 F.Supp. 1492 (D.Utah 1987). A defendant in *Sharon Steel*, UV Industries, Inc., a Maine corporation, filed articles of dissolution in 1980. UV Industries, Inc., had created UV Industries, Inc. Liquidating Trust in 1979 to liquidate its assets. CERCLA was passed in December, 1980, and the United States filed the action against defendants Sharon Steel Corporation, UV Industries, Inc., and UV Industries, Inc. Liquidating Trust, in 1986. At the time of trial, the Trust had not yet distributed all of the corporation's assets.

The *Sharon Steel* court held that a dissolved corporation that was still in the process of dissolution could be held liable under CERCLA even if state corporation survival statutes limited the corporation's capacity to be sued. *Id.* at 1498. The court ruled that, if the federal policy of holding responsible parties liable for cleanup costs conflicts with the effect of a state capacity statute, CERCLA preempts state law. *Id.*

In reaching this decision, the court considered the underlying policies of CERCLA. "Wherever possible, however, CERCLA places the ultimate financial burden of toxic waste cleanup on those responsible for creating the harmful condition." *Id.* at 1495 (quoting *Artesian Water Co. v. Government of New Castle County*, 659 F.Supp. 1269, 1276 (D.Del.1987)). CERCLA is to be construed broadly and liberally "to assure that those who profit from hazardous activities 'bear the costs and responsibility for remedying the harmful conditions they created'." *Id.* (quoting *United States v. Reilly Tar & Chem. Corp.*, 546 F.Supp. 1100, 1112 (D.Minn.1982)).

The *Sharon Steel* court also interpreted the language of sec. 107(a) that "any person ... shall be liable ... notwithstanding any other provision or rule of law ..." to clearly express "Congress's intent to supersede any rule that would otherwise relieve a responsible party from liability." *Id.* at 1496.

The court in *Sharon Steel* addressed the fear expressed by the 9th Circuit in *Levin* that finding federal preemption of state capacity statutes would mean that a party that lacked capacity to be sued under state law could be sued in any case involving a federal question. "In the great majority of cases, the general capacity provisions of rule 17(b) would apply. Only where, as here, Congress clearly expresses its intention to supersede the general capacity provisions would a court be free to ignore state capacity law." *Id.* at 1498.

In another recent case concerning CERCLA preemption of state capacity statutes, the District Court for the Western District of Kentucky reached the same conclusion as the court in *Sharon Steel*: if CERCLA imposes liability but the corporation lacks the capacity to be sued under state law, the two laws conflict and CERCLA preempts the state statute. *U.S. v. Distler*, 741 F.Supp. 643, 646 (W.D.Ky.1990).

> Whether a corporation is liable under CERCLA is a question of federal law and cannot depend on the law of the state of incorporation which will vary from state to state. By enacting CERCLA Congress created a national program to address a national problem. It could not have intended companies in identical positions to be treated differently if they were incorporated in different states. Such would be the result if the issue of liability depended upon the law of the fifty states.

*Id.*

The *Distler* court ruled that, although the defendant corporation was susceptible to liability under CERCLA, there was "no precedent for imposing liability on a dissolved corporation nine years after it has wound down and distributed its assets." *Id.* at 647.

C. Discussion of CERCLA preemption of state capacity statutes

■ Federal preemption can be based on explicit preemption by Congress, on occu-

pation of the entire regulatory field, or on conflict between federal and state law. *Michigan Canners & Freezers Assoc., Inc. v. Agricultural Marketing & Bargaining Board,* 467 U.S. 461, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984). A conflict between federal and state law arises "when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'." *Id.* at 469, 104 S.Ct. at 2522 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). It is this basis of preemption that applies in this case.

■ The interpretation of any statute begins with the language of the statute itself. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539, *rhg. denied* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975). (Powell, J., concurring.) ("The starting point in every case involving construction of a statute is the language itself."). Section 107(a) of CERCLA begins, "notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section ..." the following persons are subject to liability under CERCLA. 42 U.S.C. Sec. 9607(a).

Both the *Sharon Steel* and *Distler* courts directly considered the "notwithstanding" language in section 107(a) and concluded that the language clearly expresses Congress's intent to preempt any rule that would relieve an otherwise responsible party from liability. *See Sharon Steel,* 681 F.Supp. at 1496 ("Section 107 clearly expresses Congress's intent to supersede any rule that would otherwise relieve a responsible party from liability"); *Distler,* 741 F.Supp. at 646:

> Congress clearly intended to hold responsible parties liable for cleanup costs '[n]otwithstanding any other provision or rule of law.' ... This court concludes that, if the effect of a state capacity statute is to limit the liability of a party Congress meant to hold liable for cleanup costs, Congress intended CERCLA to preempt it.

Despite the clear language, it can be argued that if Congress had intended preemption, it would have included the broad preemption language found in other federal statutes. Note, *Corporate Life After Death: CERCLA Preemption of State Corporate Dissolution Law,* 88 Mich.L. Rev. 131, 141 (1989) (*see, e.g.,* section 514 of The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001–1461 (1982)).

Because of CERCLA's whirlwind adoption by Congress, some courts have indicated that reliance on the statutory language alone may be inappropriate. *See, e.g., United States v. Wade,* 577 F.Supp. 1326, 1331 (E.D.Pa.1983) ("Any attempt to devine the legislative intent behind many of its [CERCLA's] provisions will inevitably involve a resort to the Act's legislative history.").

There is no direct discussion in CERCLA's legislative history about whether a state law that completely removes liability from a class of potential defendants would be preempted by CERCLA. Nevertheless, three clear components of congressional intent have been recognized by courts interpreting CERCLA.

First, Congress was concerned about the magnitude of the problem of inactive hazardous waste sites. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1081 (1st Cir.1986). *See also, United States v. Wade,* 577 F.Supp. at 1331; *United States v. Reilly Tar & Chemical Corp.,* 546 F.Supp. at 1112 n. 2 (D.Minn.1982).

Second, the record is clear that Congress created the Superfund so that sites could be cleaned up immediately and before litigation resolved who would be eventually liable. *United States v. Reilly Tar & Chemical Corp.,* 546 F.Supp. at 1112. *See also* 126 Cong.Rec. 30, 939–40 (1980) (Statement of Sen. Bradley) ("[A] single mechanism is established to permit Government to pay cleanup costs resulting from releases of hazardous substances into the environment.... [T]he legislation provides for emergency response without creating an elaborate regulatory bureaucracy.")

Third, Congress intended to impose the costs of cleanup on those who were respon-

sible for the creation, transportation, and disposal of the hazardous substances. *Dedham Water Co.*, 805 F.2d at 1081. *See also* 126 Cong.Rec. 30,971 (1980) (Statement of Sen. Chaffee) ("Governments must have a tool for holding liable those who are responsible for [cleanup] costs."); *id.* at 30,941 (statement of Sen. Mitchell) ("The guiding principle of those who wrote S. 1480 was that those found responsible for harm caused by chemical contamination should pay for the costs of that harm.").

These components of Congressional intent provide a strong basis for the preemption of state corporate dissolution law. State corporate dissolution laws that allow a corporation to dissolve and thus escape liability for what may be years of dumping of hazardous substances clearly stand as an "obstacle to the accomplishment of the full purposes and objectives of Congress."

The Delaware District Court held that CERCLA preempts the Delaware State Tort Claims Act because the state law was an obstacle to fulfillment of Congressional objectives. *Artesian Water Co. v. Gov't of New Castle County*, 605 F.Supp. 1348 (D.Del.1985).

> In the case at bar, federal law [CERCLA] mandates that political subdivisions be legally responsible, *inter alia*, for response costs incurred in taking removal or remedial actions at sites owned or operated by such political subdivisions; state law [Delaware Tort Claims Act] purports to say that they are not so liable. If this is not an actual conflict situation, it clearly is one in which Delaware's Tort Claims Act stands as an obstacle to the accomplishment of the full purposes and objectives which Congress sought to fulfill in enacting CERCLA. Therefore, the Tort Claims Act is preempted.

*Id.* at 1354.

Any dissolved corporation that is a potential CERCLA defendant may have benefited from the cheap disposal of hazardous wastes. If the resources of these dissolved corporations are available, those resources should be available for cleanup and the party who benefited from the cheap dispos-al should be held responsible. To continue to allow dissolved corporations to escape responsibility for disposal of hazardous wastes will frustrate the goals of CERCLA.

### D. Ninth Circuit Law on CERCLA preemption of state capacity statutes

■ In spite of the foregoing analysis of the issue, this court is nonetheless bound to follow precedent in the Ninth Circuit established in *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 817 F.2d 1448, 1451 (9th Cir.1987):

> Levin's interpretation, if followed, would prevent courts from looking to state law to determine whether a dissolved corporation could be sued in any case involving a federal cause of action. We reject this reasoning and hold that CERCLA does not preempt California law determining capacity to be sued.

The court's holding, therefore, clearly indicates that the Ninth Circuit rule is that CERCLA does not preempt state law determining capacity to be sued.

This court followed the precedent established by *Levin Metals* in granting Defendant Industrial Mineral Products, Inc.'s Motion for Summary Judgment of Dismissal in *Louisiana Pacific Corp. v. Asarco, Inc.*, Western District of Washington, No. C88–217TB, order entered 14 March 1990. It appears that a better rule is that expressed by the District Courts of Utah and Kentucky. Based on the law of preemption, the statutory language of CERCLA, and the legislative intent of Congress in passing CERCLA, CERCLA should preempt state capacity statutes which are in conflict with the policies and goals of the federal law.

Nevertheless, based on clear precedent in the Ninth Circuit, defendants' motion to dismiss the complaint of CRSC against the corporate defendant, Yankee Country, treated here as a motion for summary judgment, must be granted.

### II. *CERCLA liability of individual defendants*

Defendants also move to dismiss defendants Charles Gilman and Jerry Melton

based on the inclusion of shareholders in the state corporate capacity statute. Title 23A.28.250 RCW provides in part that "the dissolution of a corporation ... shall not take away or impair any remedy available to or against such corporation, its directors, officers, or *shareholders* ..." as long as the claim is brought within two years of dissolution. (emphasis added).

However, as defendants point out in their motion, the complaint names Gilman and Melton as being "owners/operators" for purposes of CERCLA liability. Potential liability as an owner/operator rests upon a basis independent from that of the corporation.

■ Individual liability under Section 107(a) of CERCLA may flow to persons who are officers, directors, shareholders and employees of a corporation from the meaning of "operator" under CERCLA. *See, e.g., United States v. Northeastern Pharmaceutical & Chemical Co.*, 579 F.Supp. 823, 848 (W.D.Mo.1984), *aff'd*, 810 F.2d 726 (8th Cir.1986) ("An employee of a corporation can be personally liable for activities over which he had direct control and supervision.").

■ A finding of individual liability is fact-specific. *See Northeastern Pharmaceutical*, 579 F.Supp. at 848 (With respect to individual personal liability, the following are relevant: capacity to timely discover discharges; capacity to prevent and abate damage; power to direct activities of persons controlling the mechanism causing pollution); *Kelley v. Thomas Solvent Co.*, 727 F.Supp. 1532, 1543 (W.D.Mich.1989) (individual liability depends upon a number of recurring factors).

Furthermore, individual shareholders and officers should not be shielded by the corporate veil because to do so "would frustrate congressional purpose by exempting from the operation of the Act a large class of persons who are uniquely qualified to assume the burden imposed by [CERCLA]." *Northeastern Pharmaceutical*, 579 F.Supp. at 849.

■ The issue of the potential liability of the individual defendants is not ripe for summary judgment. The record shows that Charles Gilman and Jerry Melton were the president and secretary, respectively, of Yankee Country Flight Center, Inc. Genuine issues of material fact exist concerning the status of these individuals with respect to the corporation, ownership of the property, and their personal involvement with the disposal of hazardous substances at the Vancouver Aerodome facility.

Defendants' motion to dismiss the complaint of CRSC against the individual defendants, treated here as a motion for summary judgment, should be denied.

### CONCLUSION

For the above-stated reasons, it is hereby

ORDERED that Defendants' Motion to Dismiss, treated here as a motion for summary judgment, is GRANTED as it applies to Defendant Yankee Country Flight Center, Inc. and Yankee Country Flight Center, Inc. is hereby DISMISSED from this action. It is further

ORDERED that Defendants' Motion to Dismiss, treated here as a motion for summary judgment, is DENIED as it applies to Defendants Charles Gilman and Jerry Melton.