The **CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA, Plaintiff,**

v.

**PECK IRON & METAL CO., INC., et al., Defendants.**

**Civ. A. No. 92–CV–506.**

United States District Court, E.D. Virginia, Richmond Division.

Dec. 3, 1992.

Richard Kent Bennett, Shawn Renea Urelius Jordanger, Betty Sinclaire Wommack, McSweeney, Burtch & Crump, Richmond, VA, for plaintiff.

William S. Winfrey, II, Princeton, WV, for defendant Betty Fuller, d/b/a S.S. Belcher & Co.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the motion of Defendant Betty Fuller d/b/a S.S. Belcher & Company ("Fuller") to dismiss the claim asserted against her, pursuant to Fed. R.Civ.Proc. 12. The motion presents the question, apparently unaddressed by any reported federal court opinion to date, of whether successor sole proprietorships should be exposed to liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") in the same or similar fashion as successor corporations. Finding no rational basis for creating a different set of rules for these types of successor entities, and remaining consistent with the reasoning of courts imposing successor corporate liability under CERCLA, the Court denies the motion to dismiss.

### I. Factual Background

In the early 1980s, a company called S.S. Belcher & Company ("S.S. Belcher") sold spent lead-acid batteries to C & R Battery Company, Inc. ("C & R Battery"). At the time of these sales, S.S. Belcher was owned as a partnership by S.F. Fuller, Jr. (Fuller's husband) and Frances F. Fensom (Fuller's sister-in-law). In 1987, Fuller's husband bought out Fensom's share of the partnership, and thereafter operated S.S. Belcher as a sole proprietorship. In 1988, Fuller's husband died, leaving S.S. Belcher to her.

Fuller concedes that S.S. Belcher is a "responsible party" within the meaning of CERCLA, 42 U.S.C. § 9607(a). (Fuller Mem. at 2.) As Fuller herself frames it, the issue before the Court is whether Fuller, as sole successor to a responsible party, is herself a responsible party under CERCLA.

### II. Analysis

Fuller essentially seeks to succeed in interest to the assets of S.S. Belcher and to continue to operate the company, while at the same time avoid its liabilities under CERCLA. This position is untenable in light of the federal case law addressing the liability of successor entities under CERCLA.

██ As a threshold matter, it is federal common law interpreting CERCLA, and not West Virginia state law governing Fuller's capacity to be sued, that controls the Court's analysis. Thus, Fuller's unsubstantiated allegation that West Virginia law precludes

imposition of liability upon her is of no moment. This point was made clear by the court in *United States v. Distler,* 741 F.Supp. 643, 646 (W.D.Ky.1990) (*Distler II*), which is characterized even by Fuller as one of two "leading District Court decisions in this area." (Fuller's Mem. at 3.) The *Distler II* Court observed:

> Congress clearly intended to hold responsible parties liable for cleanup costs "[n]otwithstanding any other provision or rule of law." 42 U.S.C. § 9607. It did not limit the preemptive force of section 107 to state liability laws, nor is this court willing to undermine congressional intent by reading such a restriction into the statute. This court concludes that, if the effect of a state capacity statute is to limit the liability of a party Congress meant to hold liable for cleanup costs, Congress intended CERCLA to preempt it.

741 F.Supp. at 646, *quoting, United States v. Sharon Steel Corp.,* 681 F.Supp. 1492, 1497–98 (D.Utah 1987). The Court, therefore, need not reach any issues of West Virginia law, but instead turns to federal common law to resolve Fuller's potential liability, recognizing that there does not appear to be a federal decision directly on point. (Fuller's Mem. at 2; C & P's Mem. at 3).

■ Fuller admits that "[t]he proposition needs no citation that successor liability is now a part of the Federal Common Law interpreting CERCLA," and that successor corporate liability has been recognized in virtually every judicial circuit. (Fuller's Mem. at 2.) While C & P argues that the reasoning of the opinions imposing CERCLA liability upon successor corporations is properly extended to encompass successor proprietorships, Fuller disagrees, analogizing herself to a distributee receiving the assets of a dissolved corporation, and disclaiming liability under CERCLA. *See Distler II,* 741 F.Supp. at 647 ("[T]he United States has presented no convincing authority to support its position that a corporation which has completely wound down and distributed its assets can be held liable under CERCLA.").

*Distler II* and its companion case, *United States v. Distler,* 741 F.Supp. 637 (W.D.Ky. 1990) (*Distler I*), provide no support for Fuller's position. *Distler I* held that the

"substantial continuity" or "continuity of enterprise" exception to the traditional rule of corporate successorship, *see Distler I,* 741 F.Supp. at 640–41, provides the basis for imposing liability upon successor corporations under CERCLA. Under this approach, the Court is directed to weigh a number of factors in determining whether to impose successor liability, including whether the successor:

> (1) retains the same employees; (2) retains the same supervisory personnel; (3) retains the same production facilities in the same location; (4) continues producing the same products; (5) retains the same name; (6) maintains continuity of assets and general business operations; and (7) whether the successor holds itself out to the public as the continuation of the previous corporation.

*Distler I,* 741 F.Supp. at 642–43 (citations omitted). It appears from the record that each of these factors is present in this case; the company is apparently being operated in the same general fashion today as it was by Fuller's husband, and there has not been any significant change in the company's personnel, products, facilities or name, according to the information before the Court. Certainly, Fuller has placed no evidence before the Court which indicates that she falls outside of the "continuity of enterprise" category.

Fuller's comparison of herself to a mere shareholder who has received a distribution of assets from a dissolved corporation is implausible. She is, according to her own affidavit, running the company today. The *Distler* cases hold that a successor entity, like Fuller, which continues to operate a predecessor business, can be held liable under CERCLA, but that the shareholders of the predecessor corporation which had sold its assets, been dissolved, wound down, and distributed its assets to its shareholders nine years prior to the CERCLA suit were not liable. Fuller is a successor in interest, not some mere shareholder receiving an attenuated asset distribution from a defunct corporation.

The Court recognizes that Fuller had no contact with her husband's business until his death and that she, like other defendants in this case, may not have had any reason to anticipate the possibility of incurring liability

under CERCLA. But the broad remedial purposes behind the enactment of CERCLA seek to attempt to hold responsible parties liable for the mammoth task of cleaning up hazardous waste sites all across the land in lieu of imposing that duty upon taxpayers with absolutely no connection to the pollution at issue. Fuller may not deem herself "responsible," but by ascending to the assets of an entity that was a responsible party under CERCLA, she is more appropriately positioned to participate in cleanup efforts than the average taxpayer.

> Congressional intent supports the conclusion that, when choosing between the taxpayers or a successor corporation, the successor should bear the cost. Benefits from use of the pollutant as well as savings resulting from the failure to use non-hazardous disposal methods inured to the original corporation, its successors and accrued only indirectly, if at all, to the general public. We believe it in line with the thrust of the legislation to permit—if not require—successor liability under traditional concepts.

*Smith Land and Improvement Corp. v. Celotex Corp.,* 851 F.2d 86, 92 (3d Cir.1988). The Court can divine no principled reason to apply this sound reasoning to successor corporations and not successor proprietorships. Thus, Fuller's Motion to Dismiss is denied.