### THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, Plaintiff,

v.

### CONSOLIDATED FIBERS, INC., et al., Defendants.

No. CIV. A. 5:97–CV–219–C.

United States District Court,
N.D. Texas,
Lubbock Division.

June 3, 1998.

Douglas W. Poole, David Elias Cowen, McLeod, Alexander, Powel & Apffel, Galveston, TX, for plaintiff.

Don Clark Dennis, Boerner & Dennis, Lubbock, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

CUMMINGS, District Judge.

On this day the Court considered Defendant Friedman & Son, Inc.'s ("Friedman") Motion to Dismiss filed December 19, 1997. On January 12, 1998, Plaintiff The Burlington Northern & Santa Fe Railway Co. ("Burlington") filed a Response to the Motion. Friedman filed a Reply to Burlington's Response on January 27, 1998. After considering all relevant arguments and evidence, the Court **DENIES** Friedman's Motion to Dismiss.

### I.

### BACKGROUND

Burlington brought this action to recover damages from several Defendants because of heavy metal contamination of its property in Lubbock County, Texas. After various leases between Burlington and Jack D. Williamson beginning in 1959, Friedman entered into an assignment contract between Jack D. Williamson and Burlington that assigned the lease contract to Friedman on September 28, 1979. At this time, they also made an assignment on the subleased portion of Burlington's property to Friedman.

Subsequently, on January 27, 1992, a supplemental agreement of assignment was made between Burlington, Friedman, and Consolidated Fibers, Inc. This contract assigned the lease contract to Consolidated Fibers, Inc. As part of the leases previously referred to, the Defendants were required to properly maintain the leased premises in compliance with all federal, state, and local laws, regulations, and ordinances.

Burlington alleges that when it leased its property to the Defendants, and unbeknownst to Burlington, the property was subjected to metal contamination. Burlington also claims that staining was visible on several areas of the leased property, along with at least one area of visibly detectable hydrocarbons. Allegedly this staining and release of chemicals were present while Burlington was leasing the property to the Defendants. Burlington avers that because of this contamination, it has incurred substantial costs in consulting, environmental and legal fees in an effort to remediate the site as required by federal and state laws.

### II.

### MOTION TO DISMISS STANDARD

Friedman brings this Motion to Dismiss under Rule 12(b) and 17(b) of the Federal Rules of Civil Procedure. While there are several different reasons why an action may be dismissed under Rule 12(b), after reading Friedman's Motion and Reply, the Court assumes that Friedman is moving for dismissal pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

The only issue raised by a Rule 12(b)(6) motion to dismiss is whether the facts pleaded would, if established, support a valid claim for relief. A Rule 12(b)(6) dismissal is not appropriate *"unless it appears beyond a doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982).

Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. *Kaiser,* 677 F.2d at 1050 (citing 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 at 598 (1969)). Indeed, the Fifth Circuit has held that dismissal of a

claim under Rule 12(b)(6) is a "precarious disposition with a high mortality rate." *Id.*

■ Within the strong framework of policy considerations that militate against granting motions to dismiss for failure to state a claim, two primary principles guide the review of a complaint which is sought to be dismissed. *Id.* at 1050. First, the court must accept as true all well-pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff. *Id.* (citing *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. Unit A Feb.1981); *Voter Information Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 210 (5th Cir.1980); *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir.1969)). Second, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint that would entitle him to relief. *Id.* (citing *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99).

### III.

### ANALYSIS

Friedman moves the Court to dismiss this action because it allegedly has no legal existence and therefore lacks capacity to be sued. Friedman asserts that pursuant to Federal Rule of Civil Procedure 17(b), its capacity to be sued must be determined by the state law where it was organized. Specifically, Friedman, organized under the laws of Colorado, is asserting that it can only be sued within two years after dissolution pursuant to Rule 17(b) and COLO. REV. STAT. § 7–8–122 (current version at § 7–114–106 (1997)). Additionally, Friedman asserts that because it is no longer a legal entity pursuant to Colorado statute and Rule 17(b), any service of process is insufficient. Burlington counters that the Colorado corporation law and Rule 17(b) are preempted and superseded, respectively, by the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675. The Court notes that the question of whether CERCLA preempts state corporate dissolution law and supersedes Rule 17(b) are issues of first impression within the Fifth Circuit.

### A.

Generally, a corporation's existence, and thereby its capacity to be sued, is governed by state law. This rule was established by the Supreme Court in *Oklahoma Natural Gas Co. v. State of Oklahoma*, where the Court found that only state statutory authority could extend the capacity of a dissolved corporation to be sued. 273 U.S. 257, 259–60, 47 S.Ct. 391, 71 L.Ed. 634 (1927). The Supreme Court continued to develop this doctrine in *Chicago Title & Trust Co. v. Forty-one Thirty-Six Wilcox Building Corp.*, 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147 (1937). In *Chicago Title & Trust*, the Supreme Court found that a corporation's existence, and thereby its capacity to be sued, was exclusively a matter of "state policy, to be decided by the state legislature." *Id.* at 127–28, 58 S.Ct. 125. Further, the Court stated that the "Federal Government is powerless to resurrect a corporation which the state has put out of its existence for all purposes[.]" *Id.* at 128, 58 S.Ct. 125. This common law rule was codified in Federal Rule of Civil Procedure 17(b), which provides that "The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." FED. R. CIV. P. 17(b).

Friedman was incorporated pursuant to Colorado law. Therefore, Rule 17(b) calls for application of Colorado law on the issue of a corporation's capacity to be sued. The applicable law, COLO. REV. STAT. § 7–8–122 (current version at § 7–114–106 (1997)), provides that a corporation is not amenable to suit more than two years after its dissolution. Therefore, Friedman would not normally be amenable to this action, as Burlington brought this claim more than two years after Friedman's dissolution in 1991.

■ Burlington argues in reply that Rule 17(b) and the Colorado statute are superseded and preempted, respectively, by Congress' enactment of CERCLA. Federal law such as CERCLA can preempt state law in a limited number of circumstances. The Supreme Court has enumerated three ways in which federal law may preempt state law. *See Michigan Canners & Freezers Ass'n v. Agricultural Mktg. and Bargaining Bd.*, 467

U.S. 461, 469, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984). Federal law may preempt state law by: (1) explicit congressional preemption, (2) occupation of an entire regulatory field, or (3) creating federal law which actually conflicts with state law. *Id.* A federal law actually conflicts with state law when compliance with both is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the objectives of Congress. *Id.*

■■■ Furthermore, Congress has the plenary power to supersede the Federal Rules of Civil Procedure by subsequent enactments. Under the test established by the Tenth Circuit in *United States v. Gustin–Bacon Div., Certain-teed Prods. Corp.,* Congress can supersede "any or all of the Rules" if "congressional intent to do so clearly appears[.]" 426 F.2d 539, 542 (10th Cir.1970). If such intent does not clearly appear, "subsequently enacted statutes ought to be construed to harmonize with the Rules, if feasible." *Id.* (footnote omitted). Federal statutes may also supersede a Rule if the congressional scheme of liability is wholly inconsistent with that Rule. *See Robbins v. Pepsi–Cola Metro. Bottling Co.,* 800 F.2d 641, 643 (7th Cir.1986) (per curiam). Thus, federal statutes may supersede Federal Rules of Civil Procedure only when the statute clearly expresses congressional intent to supersede, or by creating a regulatory scheme which wholly conflicts with the state statute.

## B.

■■ Having addressed Congress' power to preempt state law and supersede the Federal Rules, the Court now turns to the issue of whether CERCLA preempts the Colorado statute. Any attempt to interpret a statute must begin with an analysis of the statute itself. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). CERCLA is a federal statute which provides for the cleanup of sites contaminated by the disposal of hazardous substances. Its "broad, remedial purpose is to facilitate the prompt cleanup of hazardous waste sites and to shift the cost of environmental response from the taxpayers to the parties who benefitted from the wastes that caused the harm." *OHM Remediation Servs. v. Evans Cooperage Co.,* 116 F.3d 1574, 1578 (5th Cir.1997).

To achieve these goals, Congress created a broad scheme of liability which provided that responsible "persons" should be held liable for the costs of environmental cleanup, subject only to the enumerated defenses laid out in § 107(b), and "[n]otwithstanding any other provision or rule of law[.]" 42 U.S.C. § 9607(a). The statutory definition of "persons" includes corporations, but does not mention dissolved corporations. *See id.* § 9601(21).

■ This failure to explicitly include dissolved corporations within the statute's definition of "persons" does not necessarily mean that Congress did not intend to include them within the scope of the statute's liability. Other corporate statutes enacted before CERCLA imposed liability only upon existing corporations, thereby explicitly excluding dissolved corporations. *See, e.g.,* 15 U.S.C. § 7 (limiting the Sherman Act's definition of a "person" who could be subjected to suit to "corporations and associations existing under or authorized by the laws of ... any State"). Had Congress intended to limit liability to existing corporations, it could have expressly done so. Therefore, an examination of the plain language of the statute leads to the conclusion that Congress intended to create liability notwithstanding any other law. Therefore, the Court finds that CERCLA preempts the Colorado statute, because it actually conflicts with CERCLA. The Colorado statute stands as an obstacle to the accomplishment and execution of the full purposes of CERCLA, and under the Supremacy Clause of the Constitution must yield to federal law. *Michigan Canners,* 467 U.S. at 469, 104 S.Ct. 2518.

## C.

A review of the case law interpreting CERCLA reveals two main lines of decisions on the issue of whether CERCLA supersedes Rule 17(b) and preempts state corporate dissolution law. The Ninth Circuit's decision in *Levin Metals Corp. v. Parr–Richmond Ter-*

*minal Co.* exemplifies the first line of cases finding no preemption.[1] 817 F.2d 1448 (9th Cir.1987). In *Levin,* the plaintiff brought a CERCLA action to recover response costs against a corporation which had dissolved fourteen years before the commencement of the plaintiff's suit. The judges of the Ninth Circuit, without discussion, followed Federal Rule of Civil Procedure 17(b) and affirmed the district court's application of California corporations law, which prohibited suit against a dissolved corporation. In the scant two paragraphs which the Ninth Circuit devoted to the issue of whether CERCLA preempted California law, the court drew a distinction between CERCLA, which imposes liability on responsible parties, and Rule 17(b), which governs capacity to be sued. *See id.,* 817 F.2d at 1451. This distinction implied that Rule 17(b), as a procedural rule, was not superseded by CERCLA's substantive imposition of liability.

The flaws of such an analysis, however, are readily apparent. In fact, a district court within the Ninth Circuit which was required to follow *Levin* criticized its rationale. *See Columbia River Service Corp. v. Gilman,* 751 F.Supp. 1448, 1453 (W.D.Wash.1990). The lead case finding preemption, *United States v. Sharon Steel Corp.,* 681 F.Supp. 1492 (D.Utah 1987), succinctly identifies the most glaring flaw in *Levin:*

> The fact that section 107 of CERCLA defines liability does not necessarily mean that it does not preempt state capacity law

as well. The distinction the court of appeals relied on between statutes limiting liability and those defining capacity to be sued is a distinction without a difference. Every statute limiting liability defines, at least in part, one's capacity to be sued, and every statute limiting one's capacity to be sued also limits liability. Indeed, the surest way to limit one's liability is to take away his capacity to be sued. One cannot be held legally responsible for his acts if that responsibility cannot be enforced.

*Sharon Steel,* 681 F.Supp. at 1497.

The second line of cases, embodying a majority of federal courts writing on the issue, have held that CERCLA preempts state laws which could limit the liability of dissolved corporations under CERCLA.[2] These courts have focused on CERCLA's "broad remedial purpose and Congress' expressed intent that those responsible for hazardous waste sites bear the cost of cleaning them up[.]" *Sharon Steel,* 681 F.Supp. at 1496. These courts recognized that Congress clearly intended to impose liability without regard to conflicting state corporation statutes, as evidenced by CERCLA's preemptive power, "[n]otwithstanding any other provision or rule of law[.]" 42 U.S.C. § 9607(a). It is indeed difficult to imagine more sweeping language which could more forcefully express an intent to preempt any law which undermines CERCLA's remedial

---

1. *See, e.g., Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.,* 68 F.3d 1016 (7th Cir.1995); *Louisiana–Pacific Corp. v. ASARCO, Inc.,* 5 F.3d 431 (9th Cir.1993); *Levin Metals Corp. v. Parr–Richmond Terminal Co.,* 817 F.2d 1448 (9th Cir. 1987); *Columbia River Serv. Corp. v. Gilman,* 751 F.Supp. 1448 (W.D.Wash.1990); *Onan Corp. v. Industrial Steel Corp.,* 770 F.Supp. 490 (D.Minn. 1989).

2. *See, e.g., Town of Oyster Bay v. Occidental Chem. Corp.,* 987 F.Supp. 182 (E.D.N.Y.1997); *Idylwoods Assocs. v. Mader Capital, Inc.,* 915 F.Supp. 1290 (W.D.N.Y.1996); *Ekotek Site PRP Comm. v. Self,* 881 F.Supp. 1516 (D.Utah 1995); *Hillsborough County v. A & E Road Oiling Serv., Inc.,* 877 F.Supp. 618 (M.D.Fla.1995); *State ex rel. Howes v. W.R. Peele, Sr. Trust,* 876 F.Supp. 733 (E.D.N.C.1995); *AM Properties Corp. v. GTE Prods. Corp.,* 844 F.Supp. 1007 (D.N.J.1994); *Chatham Steel Corp. v. Brown,* 858 F.Supp. 1130 (N.D.Fla.1994); *BASF Corp. v. Central Transp.,*

*Inc.,* 830 F.Supp. 1011 (E.D.Mich.1993); *Barton Solvents, Inc. v. Southwest Petro–Chem, Inc.,* 836 F.Supp. 757 (D.Kan.1993); *In re Tutu Wells Contamination Litig.,* 846 F.Supp. 1243 (D.Vi.1993); *United States v. SCA Servs. of Indiana, Inc.,* 837 F.Supp. 946 (N.D.Ind.1993); *Chesapeake & Potomac Tel. Co. of Va. v. Peck Iron & Metal Co.,* 814 F.Supp. 1266 (E.D.Va.1992); *City and County of Denver v. Adolph Coors Co.,* 813 F.Supp. 1471 (D.Colo.1992); *Stychno v. Ohio Edison Co.,* 806 F.Supp. 663 (N.D.Ohio 1992); *Soo Line R.R. v. B.J. Carney & Co.,* 797 F.Supp. 1472 (D.Minn. 1992); *Traverse Bay Area Intermediate Sch. Dist. v. Hitco, Inc.,* 762 F.Supp. 1298 (W.D.Mich. 1991); *T–K City Disposal, Inc. v. Commercial Union Ins. Co.,* 761 F.Supp. 552 (N.D.Ill.1991); *United States v. Mexico Feed & Seed Co.,* 764 F.Supp. 565 (E.D.Mo.1991); *United States v. Distler,* 741 F.Supp. 643 (W.D.Ky.1990); *United States v. Sharon Steel Corp.,* 681 F.Supp. 1492 (D.Utah 1987).

scheme. *Stychno v. Ohio Edison Co.*, 806 F.Supp. 663, 669 (N.D.Ohio 1992).

While Congress did not explicitly include dissolved corporations within its statutory scheme of liability, it did provide that responsible parties "shall be held liable" for the costs of cleanup "[n]otwithstanding any other provision or rule of law[.]" 42 U.S.C. § 9607(a). This statement is a clear expression of congressional intent to supersede any rule or law which would limit the imposition of CERCLA liability on responsible parties. *See Sharon Steel*, 681 F.Supp. at 1496–99.

■ Furthermore, Congress created CERCLA with the intent to provide one consistent method of holding parties liable for the cleanup of their environmental wastes. *See Stychno*, 806 F.Supp. at 669. Application of Rule 17(b) would allow the states to enforce fifty widely varying schemes of liability which would subvert congressional intent on this matter. Given CERCLA's broad enforcement mandate, it is also likely that Congress did not intend to allow corporations, upon discovering new toxic waste sites, to be able to avoid liability simply by dissolving and then hiding behind the shield of state statutes limiting their capacity to be sued. *See Sharon Steel*, 681 F.Supp. at 1498. The Court therefore finds that CERCLA supersedes Federal Rule of Civil Procedure 17(b) and preempts Colorado corporation law, both of which conflict with the goals of CERCLA.

### D.

■ However, merely determining that CERCLA supersedes Rule 17(b) and preempts contradictory state law does not resolve the issue of the extent to which dissolved corporations may be subject to suit under CERCLA. The majority of courts, in addressing this issue, have relied on the distinction drawn in *Sharon Steel.* 681 F.Supp.

at 1498. There, the court differentiated between "dead" corporations and corporations which were "dead and buried." Dead corporations are merely dissolved entities. Dead and buried corporations, on the other hand, have not only been dissolved, but have also distributed all of their assets.

While most courts that have addressed the issue have held that dead corporations, but not dead and buried corporations, can be amenable to suit,[3] some courts have refused to recognize any distinction between the CERCLA liability of dead corporations, and corporations which are dead and buried.[4] These latter courts have emphasized that CERCLA places no limitation on the term "corporation" as used in the statute. *See, e.g., SCA Servs.*, 837 F.Supp. at 954. These courts also argue that liability under CERCLA should not turn on the collectibility of judgments, but rather should be based solely on statutory responsibility for cleanup costs. *See id.*

■ However, a corporation's amenability to suit cannot extend indefinitely after its dissolution. Further, a corporation's existence, and thus its capacity to be sued, "is closely intertwined with whether it holds assets." *AM Properties*, 844 F.Supp. at 1013. When a corporation has dissolved and distributed all of its assets, "there is no entity to sue or to defend against a lawsuit." *Hitco*, 762 F.Supp. at 1301. Judicial economy also demands that dead and buried corporations not be amenable to suit. Pursuing a judgment against a corporation with no remaining assets, and thus no continued existence, would be an unwarranted depletion of judicial resources. Thus, dissolution and distribution of all remaining assets will normally end a corporation's capacity to be sued.

However, although dead and buried corporations are not amenable to suit under

3. *See Oyster Bay*, 987 F.Supp. 182 at 201; *Idylwoods Assocs.*, 915 F.Supp. at 1304; *Ekotek*, 881 F.Supp. at 1531; *A & E Road Oiling Serv., Inc.*, 877 F.Supp. at 622; *AM Properties Corp.*, 844 F.Supp. at 1013; *Chatham Steel*, 858 F.Supp. at 1152; *Barton Solvents*, 836 F.Supp. at 761; *BASF Corp.*, 830 F.Supp. at 1013; *In re Tutu Wells*, 846 F.Supp. at 1278; *Chesapeake and Potomac Tel.*, 814 F.Supp. at 1268–69; *Adolph* *Coors Co.*, 813 F.Supp. at 1475; *Stychno*, 806 F.Supp. at 670; *T–K City Disposal, Inc.*, 761 F.Supp. at 554–55; *Hitco*, 762 F.Supp. at 1301–02; *Distler*, 741 F.Supp. at 647.

4. *See W.R. Peele, Sr. Trust*, 876 F.Supp. at 740; *SCA Servs.*, 837 F.Supp. at 953–55; *Mexico Feed*, 764 F.Supp. at 571.

CERCLA, that does not foreclose all potential remedies against dead and buried corporations. Many states have fashioned mechanisms which allow the courts to look through a corporation's mere dissolution and attach its assets, especially to avoid patently inequitable results. Also, some Courts have allowed the attachment of a dissolved corporation's assets based on such theories as corporate "alter ego" or "successor liability." *See, e.g., Oyster Bay*, 987 F.Supp. at 202–04 (discussing "piercing the corporate veil" in the CERCLA context). Although sufficient facts have not been developed in this stage of the proceedings to apply such doctrines of liability, the Court notes that other courts have applied such remedies in similar cases.

## IV.

### CONCLUSION

The Court finds that CERCLA supersedes Rule 17(b) and preempts state laws which might limit the liability of dissolved corporations to be sued under CERCLA. Further, the Court holds that CERCLA's preemption extends to dead corporations, which have lawfully dissolved under state law, but does not allow suit to be brought against corporations which are dead and buried, meaning they have dissolved and distributed all of their assets.

Evidence has been presented to show that Friedman is dissolved under Colorado law. Therefore, Friedman appears to be a dead corporation. However, facts have not been presented to show that Friedman has completely wound down and distributed all its assets, which would make it a dead and buried corporation, and therefore not amenable to suit under CERCLA. Therefore, because there still exists a set of facts upon which Burlington can be granted relief, the Court **DENIES** Friedman's motion to dismiss.

SO ORDERED.