LEVIN METALS, CORPORATION,
et al., Plaintiffs,

v.

PARR–RICHMOND TERMINAL COM-
PANY, a dissolved corporation, et
al., Defendants.

And Related Counterclaims.

And Related Consolidated Actions.

Nos. C–84–6273–SBA, C–84–6234–
SBA and C–85–4776–SBA.

United States District Court,
N.D. California.

Nov. 21, 1991.

### ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF FRED PARR COX

ARMSTRONG, District Judge.

Fred Parr Cox has moved for summary judgment dismissing all claims against him in these consolidated actions or in the alternative for partial summary judgment. No opposition to dismissal of the claims for public nuisance, private nuisance, ultrahazardous activities, or liability under 42 U.S.C. § 9607(a)(1), (3), or (4) was raised in any papers submitted to the court, and the non-opposition to dismissal of those claims was confirmed during the hearing held on this motion on October 24, 1991. The only dispute is as to dismissal of the claim that Fred Parr Cox is personally liable as an owner or operator of a facility at which hazardous substances were disposed of under Section 107(a)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").[1]

---

1. *I.e.,* 42 U.S.C. § 9607(a)(2). In fact, the only outright opposition to dismissal of even the Sec-

tion 107(a)(2) claim was made by Shell Oil Company who has not actually brought any

## FACTS

These actions involve claims relating to the clean-up of contaminated real property located on the Richmond, California waterfront (the "Property"). The facts relevant to this motion are largely undisputed.

On June 1, 1949, the Parr–Richmond Industrial Corporation ("PRIC") purchased the Property from the War Assets Administration. Ownership of the Property was transferred to two related companies—the Parr Industrial Corporation ("PIC") in 1956 and the Parr–Richmond Terminal Company ("PRTC") in 1961—before being sold to the Levin Metals Corporation in 1981.

At the time PRIC originally acquired the Property, it was encumbered by a long-term lease between the government and the R.J. Prentiss Company ("Prentiss"). Prentiss operated a facility on a portion of the Property which ground, manufactured, and processed pesticides (the "Facility"). At that time, and through the present date, the Property has also been an active bulk cargo marine terminal. At some point, Prentiss transferred its lease to Heckathorn & Company ("Heckathorn"),[2] which continued to grind and manufacture pesticides at the Property until 1965.

Fred Parr Cox was at various times a minority shareholder, director, and/or officer of PRIC, PIC, and PRTC. He was never a majority shareholder of any of the corporations. Between 1949 and 1961, in his capacity as Vice President in Charge of Leasing of PRIC and then PIC, Fred Parr Cox helped to keep the books for, and to obtain major financing for, the companies' important sales and leases.[3]

From the time PRTC acquired the Property in 1961 until 1979, when he was asked to resign and did, Fred Parr Cox was a director and PRTC's Vice President in Charge of Leasing. His actual involvement with PRTC during that period was limited to his negotiating one leasing contract, which did not involve the Facility, on PRTC's behalf.

No party contends that Fred Parr Cox at any time participated in the actual operations of the Facility or otherwise exercised control over the companies—Prentiss and Heckathorn—which did operate the Facility. Fred Parr Cox's only involvement with Prentiss and Heckathorn was to collect rents from Heckathorn and Prentiss from 1949 at least until 1956[4] and to discuss lease amendments and renewals between 1949 and 1961.

## DISCUSSION

The only disputed question is whether Fred Parr Cox can be liable as an "owner or operator" of the Facility under CERCLA Section 107(a)(2).[5]

Fred Parr Cox is clearly not an owner under traditional principles of corporate law which would require "piercing the corporate veil" of the actual corporate owner[6]

formal claim against Fred Parr Cox in this litigation. Stauffer Chemical Company, which "joined" in the opposition of Shell Oil, *has* filed a cross-action against Fred Parr Cox for contribution. Montrose Chemical Corporation ("Montrose") filed a "conditional non-opposition" to the motion for summary judgment. John Parr Cox and Parr–Richmond Terminal Company filed a conditional non-opposition disputing a discrete factual issue which does not affect this decision.

**2.** "Heckathorn" will be used to refer to Heckathorn & Co., and its successors and assigns United Chemical Co., United Heckathorn, United Chemetrics, Chemwest, Inc. and Chemsave, Inc. which companies formulated pesticides on the Property from 1950 through 1965.

**3.** In 1950, he was elected President of PRIC, which would own the Property until 1956, but his uncle, Fred Parr, remained Chairman of the

Board and Chief Operating Officer and continued to run PRIC as he had since before PRIC's acquisition of the Property in 1949.

**4.** There is some dispute as to whether Fred Parr Cox also collected rents between 1956 and 1961.

**5.** Because CERCLA "operator" liability can attach to an officer on a basis independent from his status as a corporation's shareholder, the Section 107(a)(2) claim against Fred Parr Cox is not barred under Section 2011(a) of the California Corporations Code, notwithstanding that the claim against PIC was dismissed on the grounds that PIC was dissolved in 1971. *See Columbia River Service Corp. v. Gilman,* 751 F.Supp. 1448, 1454 (W.D.Wa.1990).

**6.** Parr–Richmond Industrial Corporation from 1949 to 1956. Parr Industrial Corporation from 1956 to 1961. Parr–Richmond Terminal Corporation from 1961 to 1979.

in order to subject a shareholder to personal liability. No one has asserted that any of the factual elements justifying piercing the corporate veil (*e.g.,* that any of the three "Parr" companies was the mere "alter ego" of Fred Parr Cox) are present in this case.

■ It is well-established, however, that in certain circumstances an officer or shareholder of the corporate owner of a facility can be liable as an "operator" under CERCLA even if the traditional requirements for piercing the corporate veil are not met. *See Columbia River Service Corp. v. Gilman,* 751 F.Supp. 1448, 1454 (W.D.Wa.1990); *New York City v. Exxon Corp.,* 112 B.R. 540, 545–549, 31 E.R.C. 1412, 1418–20 (S.D.N.Y.1990).[7]

1. *Appropriate Standard for Liability*

■ The challenge, then, is to identify the circumstances in which CERCLA liability is properly imposed upon an officer or shareholder of the corporate owner of a facility at which hazardous substances were disposed. Fred Parr Cox argues that liability requires (1) the individual's actual participation in the operations of a facility or (2) the individual's exercise of control over the company responsible for the operation of a facility. Shell Oil argues that individual liability requires only a showing that the individual failed to use his corporate position to *prevent* waste disposal.

Although a spectrum of standards has been applied in officer/shareholder[8] liability cases, the weight of authority strongly favors application of the actual-participation/exercise-of-control standard. With few exceptions, courts have been willing to impose CERCLA liability upon a non-owner of the property only if the party either:

(1) actually participated in the operations of the facility;[9] *see, e.g., Riverside Market Development Corp. v. International Building Products, Inc.,* 931 F.2d 327 (5th Cir.1991) (summary judgment for corporate officer affirmed where no evidence that he

"personally participated" in disposal); *New York v. Shore Realty,* 759 F.2d 1032 (2d Cir.1985) (liability appropriate where a corporate officer "specifically directs, sanctions, and actively participates" in the maintenance of the nuisance); *United States v. Consolidated Rail Corp.,* 729 F.Supp. 1461 (D.Del.1990) (liability "requires that a person be actively participating in the management of the facility"); *Columbia River Service Corp. v. Gilman,* 751 F.Supp. at 1454 (genuine issues of fact existed as to officers' "personal involvement with the disposal of hazardous substances"); *United States v. Mottolo,* 695 F.Supp. 615 (D.N.H.1988) (the sole shareholder of the company which operated the facility had personally driven truckloads of waste to the site); *United States v. Medley,* 25 Env't.Rep.Cas. (BNA) 1315, 1317–1318 (D.S.C.1986) (individuals "who participate in the management of such a facility" can be liable); *United States v. Conversation Chemical,* 619 F.Supp. 162, 188 (W.D.Mo.1985) ("corporate officials who actively participate in the management of a disposal facility" can be liable); or

(2) actually exercised control over, or was otherwise intimately involved in the operations of, the corporation *immediately responsible* for the operation of the facility; *see, e.g., New York City v. Exxon Corp.,* 112 B.R. 540, 545–549, 31 E.R.C. 1412, 1418–1420 (S.D.N.Y.1990) (the mere authority to control insufficient for liability where no actual exercise of such control); *United States v. Allied Chemical Corp.,* 1990 WL 263611 (N.D.Cal.) (parent company's liability for subsidiary's disposal requires "involvement in the immediately responsible corporation or in operations at the facility itself"); *United States v. Mirabile,* 23 E.R.C. 1511, 1985 WL 6082 (E.D.Pa.1985) ("the mere ability to exercise control as a result of the financial relationship of the parties is insufficient for liability"); *Colorado v. Idarado Mining Co.,* 18 Envtl.L.Rep. (Envtl.L.Inst.) 20578, 20579

---

**7.** Although much of the case law is imprecise in this regard, the better construction of Section 107(a)(2) is to describe such liability as "operator" liability rather than "owner" liability.

**8.** Individual as well as corporate shareholders.

**9.** Or in the activities which resulted in disposal.

(D.Colo.1987) (parent corporation liable due to its "intimate involvement" in its subsidiary's business activities).

In fact, most cases imposing liability have effectively made findings *both* of actual participation in the operations of the facility *and* the exercise of control over the immediately responsible company. *See* Ronald G. Aronovsky and Lynn D. Fuller, *Liability of Parent Corporations for Hazardous Substance Releases under CERCLA*, 24 Univ.S.F.Law Rev. 421, 442 (1990).

Indeed, even in the case upon which Shell Oil principally relies in arguing for application of the "prevention" test, *Kelley v. Thomas Solvent Company*, 727 F.Supp. 1532 (W.D.Mich.1989), the court recommended considering the extent to which an individual was involved in the actual waste disposal practices:

> [T]he second factor examines explicit responsibility undertaken—through a job description or more informal acceptance—as a means of determining one's ability to prevent disposal problems: presumably being *formally or informally delegated to safely dispose of hazardous wastes* increases the probability that one could have had a positive effect on disposal practices.

*Kelley v. Thomas Solvent Corp.*, 727 F.Supp. at 1544 (emphasis added).

One case from the District of Maryland, *Nurad, Inc. v. Hopper & Sons*, Civ. No. 90–661 (D.Md. Aug. 15, 1991), imposed liability on an individual who, like Fred Parr Cox, was an officer and shareholder of a company upon whose property a lessee operated a polluting facility. To the extent that *Nurad* imposed liability in the absence of a finding that the individual actually participated in the operations of the facility or was otherwise intimately involved in the operations of the company immediately responsible for the facility, this court agrees with Fred Parr Cox that *Nurad* represents an unsupportable exception to the great weight of authority in this area.

Shell Oil has offered no persuasive justification for adopting a (minority) standard which would come precipitously close to imposing personal liability upon the non-owner of property merely on the basis that the individual had knowledge of the operations of the disposal facility. Such a standard is incongruent with at least the spirit, if not the holding, of *In re Bergsoe Metal Corp.*, 910 F.2d 668 (9th Cir.1990), in which the Ninth Circuit refused to impose CERCLA "owner" liability on a corporate secured creditor of the operator of the facility even upon the assumption that the defendant knew about the nature of the facility's operations *and* had "the power to get involved in actual management" of the facility. *In re Bergsoe Metal Corp.*, 910 F.2d at 672–673. *In re Bergsoe* held that a secured creditor must "*exercise* management authority before it can be held liable for action or inaction which results in the discharge of hazardous wastes." *Id.*, at 673.

In the same vain, this court holds that an individual cannot be liable as an "operator" under CERCLA Section 107(a)(2) unless that individual actually participates in the operation of the facility at which hazardous substances are disposed of, exercises control over the company immediately responsible for the operation of that facility, or is otherwise intimately involved in that company's operations.[10]

**10.** Shell Oil and Montrose have argued that application of the actual-management/exercise-of-control standard in determining whether or not Fred Parr Cox can be liable as an "operator" under Section 107(a)(2) is somehow inconsistent with Judge Conti's prior denial of Montrose's motion for summary judgment in which the court refused to dismiss claims against Montrose brought under Section 107(a)(3).

Shell Oil and Montrose are wrong. In denying Montrose's motion for summary judgment, the court simply held that a genuine issue of material fact existed as to whether Montrose in fact "arranged" to dispose of hazardous waste. The court did not hold, as Shell Oil and Montrose imply, that Montrose could somehow be liable under Section 107(a)(3) in the absence of a finding that it actually participated in an arrangement to dispose of hazardous waste.

On the contrary, the Section 107(a)(3) claims against Montrose are *premised* upon the factual allegations that Montrose participated in a contractual arrangement the direct result of which was the disposal of hazardous waste.

Dismissing the claims against Fred Parr Cox upon a finding that he did not personally partic-

### 2. *No Evidence of Actual Participation, Exercise of Control, or Intimate Involvement*

Even Shell Oil does not contend that Fred Parr Cox in fact participated in the actual management of the Facility. On the contrary, in attempting to succeed on its theory that Fred Parr Cox was liable because he *failed* to take action to *prevent* disposal, Shell Oil describes Fred Parr Cox as an "absentee landlord" who was not involved in the affairs of the facility or its operators.

Nor is there any evidence that Fred Parr Cox ever exercised control over the affairs of Heckathorn or Prentiss, the companies which did operate the Facility, or was otherwise intimately involved in those companies' operations. Indeed, as a mere officer and minority shareholder of the company which leased the Property to the Facility's operators, Fred Parr Cox was at least a full step further removed from the immediately responsible corporation than were the defendants in nearly every other case in which the exercise-of-control standard was applied, most of which involved a shareholder of the *operating* company. *See New York City v. Exxon Corp., supra; United States v. Allied Chemical, supra; U.S. v. Mirabile, supra.*

### CONCLUSION

There being no evidence that Fred Parr Cox participated in the actual operations of the Facility, exercised control over the companies immediately responsible for the Facility's operations, or was otherwise intimately involved in those companies' operations, summary judgment in favor of Fred Parr Cox is hereby GRANTED.

---

ipate in the operation of the Facility is clearly not inconsistent with refusing to grant summary judgment in favor of a corporation which expressly undertook a contractual arrangement to have that corporation's *own* chemicals processed at the Facility where the hazardous waste was disposed.