STATE OF CALIFORNIA, ON BEHALF OF the CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL; the Hazardous Substance Cleanup Fund, Plaintiffs,

v.

CELTOR CHEMICAL CORPORATION also known as MCB Systems, Inc., and Carmelo C. Celestre, Defendants.

No. C93–0642 FMS.

United States District Court, N.D. California.

Feb. 21, 1995.

Theodora Berger, Ken Alex, CA Attorney General's Office, Oakland, CA, Daniel E. Lungren, CA Attorney Gen., CA State Atty General's Office, San Francisco, CA, William N. Brieger, CA State Atty General, Sacramento, CA, for plaintiffs.

Kenneth E. Keller, Bronson Bronson & McKinnon, San Francisco, CA, Robert A. Nebrig, Carr McClellan Ingersoll Thompson & Horn, Burlingame, CA, Brian J. O'Grady, Gazzera London Smith & Cruz, Mountain View, CA, for defendants and third-party plaintiff.

## AMENDED * ORDER DENYING MOTION FOR SUMMARY JUDGMENT

FERN M. SMITH, District Judge.

### ISSUES

This motion for summary judgment requires the Court to decide whether: (1) a genuine issue of material fact exists as to whether defendant is an "operator" liable under the Federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and the California Hazardous Substance Account Act ("the California HSAA"); (2) plaintiff's claim under CERCLA is barred by the statute of limitations; (3) plaintiff's claim under the California HSAA is barred by the statute of limitations; (4) plaintiff can recover oversight fees under CERCLA; and (5) plaintiff's authority under the California HSAA is preempted by CERCLA because the site cleanup was located on an Indian reservation.

For the following reasons, the Court holds that: (1) there is a material issue of fact as to whether defendant is an "operator" liable under CERCLA and the California HSAA; (2) the claim under CERCLA is not barred by the statute of limitations; (3) the claim under the California HSAA is not barred by the statute of limitations; (4) plaintiff can recover oversight fees under CERCLA; and (5) plaintiff can bring a claim under the California HSAA even though the cleanup occurred on an Indian reservation.

### INTRODUCTION

The State of California ("the State") has brought an action against Celtor Chemical Corporation ("Celtor") and Dr. Carmelo C. Celestre ("Dr. Celestre") under CERCLA and under the California HSAA. The State seeks to recover its costs from the cleanup of hazardous materials from the land on which Celtor was located ("the Celtor site"). Dr. Celestre seeks summary judgment.

* Nonsubstantive changes were made for publica-

### BACKGROUND

The Celtor site is a 2.5 acre parcel within the boundaries of the Hoopa Valley Indian Reservation located in Humbolt County, California. Undisputed Facts, ¶ 12. Celtor operated an ore-processing plant on the site from 1960 to 1962. *Id.*, ¶¶ 12–13.

Dr. Celestre, a San Francisco physician, was the president of Celtor and a member of its Board of Directors during the entire period that Celtor operated at the Celtor site. *Id.*, ¶ 4. Dr. Celestre visited the Celtor site approximately once every other month. *Id.*, ¶ 8. The daily operation of the mine and mill at the Celtor site ("the Celtor facilities") was supervised by engineering professionals. *Id.*, ¶ 33.

In 1961, Celtor was found guilty of violating California Fish and Game Code § 5650(f) for polluting the the the Trinity River. *Id.*, ¶ 13. William D. Hawes ("Warden Hawes") was a Warden for the California Department of Fish and Game within whose jurisdiction the Celtor site was located. Warden Hawes attended a number of court proceedings involving Celtor and observed Dr. Celestre's participation in those hearings. The State's Exhibit 3, Hawes Depo. at 40, 70, 93, 117, 223.

The California Department of Health Services identified the Celtor site in 1981 as part of an abandoned site program. *Id.*, ¶ 9. The site was listed on the National Priorities List in 1983. *Id.* Samples of the soil were taken at the Celtor site in 1983 and showed hazardous concentrations of heavy metals. *Id.*, ¶¶ 9–10.

The cleanup of the site ensued. The Environmental Protection Agency ("EPA") conducted the bulk of the cleanup, while the State coordinated and participated in the process.

### DISCUSSION

### I. The Summary Judgment Standard

■ In order to withstand a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. Fed.R.Civ.P. 56(e). A dispute about a mate-

tion with the consent of the parties.

rial fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In the absence of such facts, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ In opposing summary judgment, plaintiff is not entitled to rely on the allegations of his complaint. *See* Fed.R.Civ.P. 56(e). Furthermore, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir.1982). Rule 56 provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts [that would be admissible as evidence] showing that there is a genuine issue for trial...." Fed.R.Civ.P. 56(e).

■ The Court does not make credibility determinations with respect to the evidence offered and is required to draw all inferences in a light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Summary judgment is not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts...." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir.1980).

## II. A Genuine Issue of Material Fact Exists as to Whether Dr. Celestre Was an Operator of the Celtor Facilities

■ Section 107 of CERCLA imposes liability on any "operator" of a facility for the costs incurred in cleaning up hazardous substances. 42 U.S.C. § 9607(a). Section 25323.5 of the California HSAA defines a "responsible party" or a "liable person" by reference to 42 U.S.C. § 9607(a); thus, it also imposes liability on any individual who is an "operator" under CERCLA. California Health and Safety Code § 25323.5. In his motion for summary judgment, Dr. Celestre contends that he was not an "operator" of the Celtor facilities and is therefore not liable under either CERCLA or the California HSAA.

### A. The Applicable Standard for "Operator" Liability

■ Although different standards for "operator" liability have been employed by various courts, this Court is bound by the standard adopted by the Ninth Circuit. In *Kaiser Aluminum v. Catellus Dev. Corp.*, 976 F.2d 1338, 1341 (9th Cir.1992), the Ninth Circuit held that "operator" liability under CERCLA "only attaches if the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment." The court in *Kaiser* relied on *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861 F.2d 155 (7th Cir.1988). The Ninth Circuit characterized *Hines* as holding that the defendant was not liable as an "operator" under CERCLA because he "had no authority to control the day-to-day operation of the plant ..." *Kaiser*, 976 F.2d at 1341. In this context, this Court interprets *Kaiser* to hold that, under CERCLA, liability as an "operator" attaches only where the defendant had control over the day-to-day management and administration of the facility.

Dr. Celestre argues that *Kaiser* is distinguishable because the defendant in that case was not a director or officer of the facility, but instead was hired to excavate the development site and, during that process, spread hazardous waste over parts of the property. *Kaiser*, 976 F.2d at 1339–40. The *Kaiser* court held that such allegations of "Ferry's operations on the property tend to show that Ferry had sufficient control over this phase of the development to be an 'operator'" and were therefore sufficient to withstand a motion to dismiss. *Id.* at 1342. Dr. Celestre argues that the Court should instead adopt an "active participation" standard and hold

that Dr. Celestre is not an operator under CERCLA because he did not actively participate in the hazardous waste disposal. Dr. Celestre relies on *Levin Metals, Corp. v. Parr–Richmond Terminal Co.,* 781 F.Supp. 1454 (N.D.Cal.1991) to support this assertion, contending that the court in *Levin* determined that " 'the weight of authority strongly favors the application of the actual participation/exercise-of-control standard.' " Defendant's Reply at 10 (quoting *Levin,* 781 F.Supp. at 1456). Dr. Celestre, however, uses this quote out of context and omits the remainder of the *Levin* court's expression of the applicable standard for "operator" liability. The *Levin* court held that

> an individual cannot be liable as an "operator" under CERCLA Section 107(a)(2) unless that individual actually participates in the operation of the facility at which hazardous substances are disposed of, exercises control over the company immediately responsible for the operation of that facility, *or* is otherwise intimately involved in that company's operations.

*Levin,* 781 F.Supp. at 1457 (emphasis added). Under *Levin,* Dr. Celestre can be held liable as an operator if he exercised control over or was intimately involved with Celtor's operations. Contradictory to what Dr. Celestre implies, this *Levin* standard is consistent with the standard expressed by *Kaiser* which would hold Dr. Celestre liable if he had control over the day-to-day management and administration of the Celtor facilities.

■ The Court therefore holds that an "operator" is liable under CERCLA and the California HSAA if he "had the authority to control the cause of the contamination at the time the hazardous substances were released." *Kaiser,* 976 F.2d at 1341.

**B. Genuine Issue of Material Fact**

■ It is undisputed that Dr. Celestre was Celtor's largest stockholder, was a member of its board of directors, and was its president during the period Celtor operated on the Hoopa Valley Indian Reservation. Furthermore, the State has set forth specific facts from which a reasonable juror could conclude that Dr. Celestre had control over the day-to-day management and administration of the Celtor facilities and is therefore liable as an "operator" under CERCLA and the California HSAA.

The State's Exhibit 3 is a transcript from a deposition in which Warden Hawes testified extensively about Dr. Celestre's appearances in court and the representations Dr. Celestre made at these appearances with respect to criminal charges against Celtor involving dumping into the Trinity River.[1] Hawes testified that Dr. Celestre represented to the court presiding over these criminal proceedings that he would implement proper waste disposal practices, State's Exhibit 3 at 223; that Dr. Celestre agreed that more ponds would be built to prevent the continuation of the pollution problem, *Id.* at 70; and that Dr. Celestre agreed that he would make sure that the problem was resolved. *Id.* at 93. Hawes also testified that Dr. Celestre represented that he would hire and fire people as necessary in order to take care of the pollution problem. *Id.* at 93.

Dr. Celestre argues that Warden Hawes' statements should not be considered in this motion for summary judgment because nothing was presented to demonstrate that it was a deposition, and that it should therefore be considered an "interview". Dr. Celestre claims that this "interview" was not before a court reporter, and that there is no evidence that Warden Hawes' testimony was truthful. This evidentiary objection is without merit; the required declarations supporting the admissibility of the Hawes deposition were filed by the State with its opposition papers. The State filed a declaration made by the reporter and transcriber stating that the pages included in the exhibit were a true, accurate, and complete transcription of the deposition of William D. Hawes before the U.S. Environmental Protection Agency which was recorded on November 3, 1992. State's Exhib-

---

1. The State also included other exhibits related to Celestre's appearances with respect to these criminal charges. The Court does not discuss these other exhibits because the Court finds that the evidence from the Hawes deposition creates a genuine issue of material fact as to whether Celestre was an "operator" at the Celtor facilities.

it 3 at 226. Dr. Celestre's evidentiary objection is therefore overruled.

■ Dr. Celestre also argues that Hawes' statements concerning what Dr. Celestre represented during the criminal proceedings is hearsay and inadmissible. This evidentiary objection is overruled; Dr. Celestre's statements are admissible as admissions pursuant to Fed.Rules of Evid. section 801(d)(2).

The Court is required to view the Hawes deposition in a light most favorable to the nonmoving party, the State, and is not allowed to make any determinations of credibility. *T.W. Elec. Serv.*, 809 F.2d at 630–31. Hawes' statements demonstrate that it is quite possible that Dr. Celestre had the authority to hire and fire employees at the Celtor facilities and to implement practices at the facilities to control the pollution. The Court finds that, based on this evidence, a reasonable juror could find that Dr. Celestre had the authority to control the day-to-day operations at the Celtor facilities. Accordingly, a genuine issue of material fact exists as to whether Dr. Celestre is liable as an "operator" under CERCLA; therefore, Dr. Celestre's motion for summary judgment on the ground that Dr. Celestre was not an "operator" under CERCLA and the California HSAA is DENIED.

## III. The State's CERCLA Claim Is Not Barred by the Statute of Limitations

Dr. Celestre argues that summary judgment should be entered against the State's CERCLA claim because it is barred by the statute of limitations. The State filed its CERCLA action against Dr. Celestre on February 22, 1993.

### A. The Statute of Limitations

The applicable statute of limitations for recovery cost actions under section 107 is section 113(g)(2), which provides a different limitations period for "removal actions" and for "remedial actions". 42 U.S.C. § 9613(g)(2). Section 113(g)(2) provides in relevant part,

> an initial action for recovery of the costs ... must be commenced—(A) for a removal action, within 3 years after completion of the removal action ... and (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.

42 U.S.C. § 9613(g)(2).

### B. Removal Action or Remedial Action

The term "remove" or "removal" is defined under CERCLA as follows:

> [T]he cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

42 U.S.C. § 9601(23). The terms "remedy" or "remedial action" are defined under CERCLA as follows:

> [T]hose actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment.

42 U.S.C. § 9601(24).

The relevant dates associated with the cleanup of the hazardous materials from the Celtor facilities are as follows:

January 1983: The California Department of Health took soil samples.

July 1983: The EPA engaged contractors to commence cleanup of the site.

August 1983: The EPA conducted an Initial Remedial Measure Investigation and Focused Feasibility Study.

December 1983: The EPA cleanup was completed.

October 1984: The EPA began a Remedial Investigation.

June 1985: The EPA drafted a Feasibility Study.

September 1985: The EPA signed a Record of Decision which selected excavation and offsite removal of the contaminated soils to an approved landfill.

October 1987: On-site cleanup activities began again.

October 1988: Backfilling and revegetation was completed and a one year post-remedial maintenance period began.

December 1988: On-site physical construction work was completed.

September 1989: The EPA filed its superfund site closeout report.

Joint Statement of Undisputed Facts, ¶¶ 37–48.[2]

Dr. Celestre argues that the entire course of the Celtor cleanup activities constitutes a single removal action, and the State was therefore required to bring an action within three years after the completion of this removal action. Dr. Celestre contends that the State failed to meet this statute of limitations because the last possible date that could be considered the completion of the removal action is September 29, 1989, when the EPA filed its closeout report. In the alternative, Dr. Celestre argues that if the Court is inclined to characterize any part of the cleanup activity as a remedial action, then the State's CERCLA claim is barred because the remedial action began in July 1983, when the EPA engaged contractors to commence the cleanup. Dr. Celestre therefore asserts that the State's claim was not filed within six years of that date as required by section 113(g)(2)(B).

 Neither of Dr. Celestre's characterizations of the Celtor cleanup has persuaded the Court. As a general policy, courts have

interpreted the CERCLA statute of limitations for recovery costs liberally in favor of the government. *U.S. v. United Nuclear Corp.*, 814 F.Supp. 1552, 1561 (D.N.M.1992) (citations omitted).

 The Court holds that the Celtor cleanup consists of two phases. The first phase constitutes a "removal action", which began in January 1983 when the California Health Department took soil samples, and ended in September 1985 when the EPA signed the Record of Decision. All of the cleanup activities which took place within this time period, including the Remedial Investigations and Feasibility Studies, constitute a single "removal action" under CERCLA. *See Kelley v. E.I. DuPont de Nemours and Co.*, 17 F.3d 836, 844 (6th Cir.1994) (state's removal activities, including the Remedial Investigation and Feasibility Study, constituted a single "removal action"); *see also Fairchild Semiconductor Corp. v. U.S. E.P.A.*, 769 F.Supp. 1553, 1555 (N.D.Cal.1991), *aff'd on other grounds*, 984 F.2d 283 (9th Cir.1993) (the court referred to the Remedial Investigation, Feasibility Study, and EPA's Record of Decision as occurring before remedial action takes place). The second phase constitutes a "remedial action". It began in October 1987 when the on-site cleanup activities started for a second time.

### C. Statute of Limitations Applied to the State's Claim for Costs of the Removal Action and the Remedial Action

The statute of limitations to recover the costs of the "remedial action" taken during the Celtor cleanup ran in October 1993, six years after the "remedial action" began. 42 U.S.C. § 9613(g)(2)(B); therefore, the State's action to recover costs for this "remedial action", which was filed in February 1993, is not time-barred.

 Pursuant to section 113(g)(2)(A) of CERCLA, the statute of limitations for the costs of the "removal action" ran in Septem-

---

**2.** In August of 1986, the EPA entered into an interagency agreement with the U.S. Corps of Engineers for design of the project. The Court does not consider this as a date relevant to the statute of limitations because the removal costs did not result from the agreement, but rather from the execution of the agreement when the cleanup began on-site in December of 1988.

ber 1988. The State, however, can still recover for its "removal action" costs under section 113(g)(2)(B) "if the remedial action is initiated within 3 years after the completion of the removal action." 42 U.S.C. § 9613(g)(2)(B). The Court has held that the "removal action" ended in September 1985, and that the "remedial action" began less than three years later in October 1987. The State's claim for its "removal action" costs is therefore not time-barred.[3]

## IV. The State's Action Under the California HSAA is Not Barred By the Statute of Limitations

■ Section 25360.4 of the California HSAA provides the same statute of limitations for the recovery of costs associated with both a "removal action" and a "remedial action". Such an action must be commenced "within three years after completion of the removal or remedial action has been certified by the department [the State]." California Health and Safety Code, § 25360.4(a). The Remedial Action Certification Form was signed by the registered engineer on February 28, 1990. The State filed its action less than three years later on February 22, 1993, and it is therefore not time-barred.

## V. The State's Oversight Costs are Recoverable Under CERCLA

The State's action against Dr. Celestre under CERCLA includes a claim for recovery of costs which the State incurred in overseeing the cleanup performed by the EPA. Such oversight costs include the amount spent by the State in reviewing the EPA's remedial design and reviewing EPA's implementation of the cleanup. Dr. Celestre moves for summary judgment against the State's claim for oversight costs on the basis that these are not recoverable under CERCLA.

Dr. Celestre relies on a Northern District court case which held that the State of California was not entitled to recover oversight

costs. *County of Santa Clara v. Meyers Indus.*, 1994 U.S. Dist. LEXIS 9847 (N.D.Cal.1994). The court in *Meyers* relied on a Third Circuit case, *United States v. Rohm and Haas*, 2 F.3d 1265 (3rd Cir.1993), which held that the federal government could not recover the costs it incurred in overseeing a private party's "removal" activities at a Superfund site because these oversight costs constituted an unauthorized tax which benefited the public at large and not the regulated parties. The *Rohm* court relied on a Supreme Court case, *National Cable Television Ass'n. v. United States*, 415 U.S. 336, 342, 94 S.Ct. 1146, 1150, 39 L.Ed.2d 370 (1974), which held that a federal executive agency assessment which recoups the costs of overseeing a regulated industry constitutes a federal tax to the extent it exceeds the value of the benefit of regulation to the regulated group. Under the doctrine of separation of powers, the federal government cannot collect such a tax unless Congress' intent to delegate to the Executive the discretionary authority to recover such a tax is clearly expressed. *National Cable Television*, 415 U.S. at 342, 94 S.Ct. at 1150. Relying on *National Cable Television*, the *Rohm* court held that the federal government could not collect its oversight costs because CERCLA provided no clear expression of Congress' intent to delegate such authority to the Executive. *Rohm*, 2 F.3d at 1273.

The Court does not find *Meyers* or *Rohm* to be persuasive. In *Union Pacific R.R. v. Public Utility Comm'n*, 899 F.2d 854, 859–61 (9th Cir.1990), the Ninth Circuit held that the Supreme Court had not announced universal definitions of a "tax" or "fee" in *National Cable*, but merely determined the meaning of the terms in the statute at issue. Therefore, the Court is not bound by these definitions of "tax" or "fee".

■ The Court turns to the language of CERCLA itself to determine whether Congress intended oversight costs to be recoverable. Under CERCLA, liable parties

---

3. Celestre argues that this exception cannot save the State's claim for its "removal action" costs because this exception only applies prospectively from the passage of section 113(g)(2), October 17, 1986. This argument is without merit. Cel-

estre has cited no authority, and the Court is aware of none, which prevents the exception from allowing a claim for the costs of a "removal action" which occurred before October 17, 1986.

must pay all costs of "removal" or "remedial" actions incurred by a State, which are not inconsistent with the National Contingency Plan. 42 U.S.C. § 9607(a)(1)(A). The terms "removal" and "remedial" are broadly defined. *See* 42 U.S.C. §§ 9601(23), (24) and (25). When the EPA controls the cleanup, CERCLA mandates that the State be intimately involved with the EPA's decisions. *See e.g.,* 42 U.S.C. § 9604(c)(2) (EPA must consult with the State before determining any appropriate remedial action to be taken); 42 U.S.C. § 9621(f)(1) (EPA must promulgate regulations providing for "substantial and meaningful involvement by each State in initiation, development and selection of remedial actions to be undertaken in that State"). Given CERCLA's requirements that the State take an active role in the cleanup decisions even though it is not the agency actually controlling the cleanup, it is reasonable to conclude that its oversight costs are necessary to make these decisions, and are therefore recoverable as "removal" and "remedial" costs. Moreover, the Court has an obligation to construe CERCLA broadly to accomplish its remedial goals. *3550 Stevens Creek Associates v. Barclays Bank of California,* 915 F.2d 1355, 1363 (9th Cir.1990), *cert. denied,* 500 U.S. 917, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991). The types of costs sought by the State fall comfortably within the statutory definitions of "removal" and "remedial" costs.

■ Dr. Celestre contends that because Congress specifically provided a section in CERCLA, section 111(c)(8), under which the State can recover its oversight costs Congress did not intend for oversight costs to be included in the definition of "removal" or "remedial" costs. The Court disagrees. Section 111(c)(8) allows the federal government or the State to recover from the Hazardous Substances Trust Fund the costs of appropriate oversight of remedial activities at National Priorities List sites resulting from consent orders or settlement agreements. 42 U.S.C. § 9611(c)(8). Dr. Celestre has neither alleged nor provided any evidence that the State's oversight costs resulted from a consent order or a settlement

agreement. This section is therefore inapplicable. Furthermore, the fact that Congress has provided that this specific type of oversight cost is recoverable from the fund does not reflect Congress' intention to prevent the State from recovering other types of oversight costs as a "removal" or "remedial" cost.

The Court finds that the State's costs in overseeing the EPA's cleanup activities at the Celtor site constitutes a "removal" and/or "remedial" cost within the meaning of CERCLA section 107(a)(1)(A). Dr. Celestre's motion for summary judgment against the State's claim for oversight costs is therefore DENIED.

## VI. The State's Claim Under the California HSAA is Not Pre–Empted by CERCLA Because the Clean-up Occurred on Indian Land

Dr. Celestre argues that summary judgment should be granted against the State's cause of action under the California HSAA because state law was preempted by CERCLA insofar as the State attempts to enforce its law on Indian land.

■ The Supreme Court has set forth a standard to determine whether federal legislation preempts state authority on Indian reservations. *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 333, 103 S.Ct. 2378, 2385, 76 L.Ed.2d 611 (1983).

> State jurisdiction is pre-empted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law.

*Id.* Dr. Celestre does not assert that the State's participation in the cleanup was incompatible with federal regulation under CERCLA, nor does he assert that this participation infringed on the tribal sovereignty any more than the federal government's regulation did.[4] Moreover, Dr. Celestre does not assert any inconsistencies between the California HSAA and either CERCLA or tribal interests as reflected by federal law, and the Court is aware of none. Furthermore, the State's prayer for relief under the California HSAA is based on the same fac-

---

4. Dr. Celestre makes it clear that he is not asserting, based on Indian nation sovereignty, that the

State had no authority under CERCLA to participate in the cleanup on the Indian reservation.

tors and is for the same amount as their prayer for relief under CERCLA. Under these circumstances, the Court finds that CERCLA has not pre-empted the State's claim under the California HSAA; therefore, Dr. Celestre's motion for summary judgment against this claim is DENIED.

## CONCLUSION

For the reasons stated above, Dr. Celestre's motion for summary judgment is DENIED in its entirety.

SO ORDERED.